United States District Court
for the
Southern District of Florida

| | |
|---|---|
| United States of America, <br> Plaintiff <br><br> v. <br><br> Aquarius Demon Jackson, <br> Defendant. | ) <br> ) <br> ) <br> ) Criminal Case No. 15-20612-CR-Scola <br> ) <br> ) <br> ) |

**Order Denying Motion To Suppress**

Jackson moves to suppress two firearms and a magazine of ammunition that were recovered after he was detained in Rainbow Village Park. On October 26, 2015, the Court conducted an evidentiary hearing on Jackson's Motion to Suppress. (ECF No. 17). In his Motion, Jackson argues that his arrest was based on evidence obtained from an unlawful warrantless search and seizure. (*See id.*) As a result, he says, two discarded firearms and ammunition that was discovered in his pocket must be suppressed. After considering the evidence and testimony and the relevant legal authorities, and for the reasons set forth below, the Motion is **denied.**

**1. Factual findings.**

At the hearing, Officer Angel Delgado, a one-year veteran of the Miami-Dade Police Department, testified that on November 25, 2014, he was on foot patrol at the Rainbow Projects, an area known to Officer Delgado for its high levels of crime. From about 50 yards away, he first noticed a group of individuals in the middle of dimly lit Rainbow Village Park. The park's hours—dawn to dusk—are posted as "Rule 1" on a sign at the park's main entrance in its Southwest corner. The same sign notifies visitors that the Miami-Dade Police will enforce the posted park rules. Because it was approximately 11:30 P.M., it was obvious to Officer Delgado that the group of individuals he saw in the park was there after-hours.

Aside from the group's presence in the park, Officer Delgado did not initially observe any suspicious activity. He and his partner were not called to the park that night to investigate any particular complaints. Nor did they recognize any of the individuals in the park. What's more, Officer Delgado testified that when he first approached the group, he did not see drugs, guns, ammunition, cash, or any other indicia of criminal activity.

But, as Officer Delgado and his partner approached the group, an unidentified person yelled "Nine!"—slang for "police"—and the group took off running toward the park's Northwest corner.  While pursuing Jackson and the others, Officer Delgado yelled "Stop! Police!"  Jackson did not immediately surrender to Officer Delgado's order and while Jackson was running Officer Delgado observed him throw a black handgun over a fence.  Seconds later, he observed him drop a second handgun, this one silver and black, on the ground.  After Jackson had discarded both guns, Jackson either fell or went to the ground on his own.  Officer Delgado handcuffed him and a subsequent search of his pockets uncovered a clip with ammunition.

**2.    Discussion**.

   **(a)    It was reasonable to stop Jackson in Rainbow Village Park.**

Jackson argues that the two guns and the ammunition found in his pocket should be suppressed as fruit of an unlawful seizure.  (*See* Mot. to Suppress, ECF No. 17.)  "When law enforcement officers arrested Mr. Jackson, they had no reason to believe that he had committed or was committing a crime.  Nor was there any reason to believe that he was about to commit a crime[,]" argues Jackson.  (*See id.* at 3.)  But the testimony presented by Officer Delgado belies Jackson's claims.

Jackson and others were in a public park after dark. Again, a sign at the park's entrance notified visitors that park hours were from dawn to dusk and that park rules would be enforced by the Miami-Dade police.  Seeing Jackson and his group in the park after hours, Officer Delgado and his partner entered to inquire why the group was there.  Jackson does not suggest that police officers could not have entered the park or attempted to approach him.

When Jackson and the group he was with noticed Officer Delgado and his partner, someone shouted "Nine!" and the group ran.  While Jackson was running, Officer Delgado observed him throw a black handgun over a fence and drop a silver and black handgun on the ground next to him before he stopped.  The issue central to Jackson's Motion is whether he was lawfully seized when he was searched in Rainbow Village Park.

Police officers may temporarily detain a person they have reasonable suspicion to believe had engaged in, or was about to engage in, a crime.  *See Terry v. Ohio*, 392 U.S. 1 (1968).  The Eleventh Circuit, interpreting *Terry*, has explained:

> The officers were allowed to stop [the defendant] if, under the totality of the circumstances, from the collective knowledge of the officers involved in the stop, they had an objectively reasonable suspicion that [the defendant] had engaged, or was about to engage, in a crime. The reasonable suspicion must be more than an inchoate and unparticularized suspicion or hunch. Thus, [w]hile reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop. It does not require officers to catch the suspect in a crime. Instead, [a] reasonable suspicion of criminal activity may be formed by observing exclusively legal activity.

*United States v. Acosta*, 363 F.3d 1141, 1145 (11th Cir. 2004) (internal quotations and citations omitted).

In this case, it was not only Jackson's presence in a high-crime area and Rainbow Village Park during its closed hours that aroused the police officers' suspicion, but also his unprovoked flight upon noticing the police. Nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). "Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Id.*

Though the "'refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure[,]'" *Id.*, the Supreme Court recognizes that "unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not 'going about one's business'; in fact, it is just the opposite." *Id.*

Jackson's flight, coupled with the firearms Officer Delgado witnessed him discard, provide ample evidence justifying Jackson's detention and search in Rainbow Village Park. Indeed, under the facts of this case—unprovoked flight upon seeing police and discarding two firearms so as not possess them when caught by police—there was probable cause to arrest Jackson for unlawful possession of the firearms. *See United States v. Williams*, 333 Fed. App'x 127 (7th Cir. 2009) (finding that unprovoked flight coupled with police officers' observation of gun being discarded created probable cause to make an arrest). Because the stop and search were reasonable, nothing recovered by police as a result will be suppressed.

**(b)     Even if Jackson's stop was unreasonable, the firearms he discarded would not be suppressed.**

Even if, for argument's sake, the police officers did not have reasonable suspicion sufficient to detain Jackson in the park, the two firearms he discarded are still admissible. Before Jackson was seized and as he ran, he discarded both weapons. He was not actually seized by police until he stopped after discarding the guns. A seizure does not occur until a defendant submits himself to the authority of the police. *See California v. Hodari D.*, 499 U.S. 621 (1991) ("[A]ssuming [the police officer's] pursuit in the present case constituted a 'show of authority' enjoining [the defendant] to halt, since [the defendant] did not comply with that injunction he was not seized until he was tackled. The cocaine abandoned while he was running was in this case not the fruit of a seizure[.]"). Because he discarded the guns before he was actually seized, even if the seizure was wrongful, the guns had already been voluntarily abandoned and would not be suppressible as the fruit of an unconstitutional seizure. *See United States v. Dolomon*, 569 Fed. App'x 889, 893 (11th Cir. 2014); *see also United States v. Cofield*, 272 F.3d 1303, 1306 (11th Cir. 2001) (explaining that if a defendant has abandoned property—meaning that he "voluntarily discarded, left behind, or otherwise relinquished his interest" in it, he has no Fourth Amendment basis for objecting to its later acquisition by the police).

**Done and Ordered** at Miami, Florida, on October 28, 2015.

_____
United States District Judge
Robert N. Scola, Jr.